Next case is Moneycat v. Ebay, 2016, 1399, 1405, and 1408, Mr. Wisnia.  Your Honor, Howard Wisnia for Appellant Moneycat, and may it please the Court. The Board in this case made four errors in holding the Moneycat patents obvious under Section 103. First, the Board erred by summarily concluding that the combinations asserted rendered obvious the entire claim without actually making any factual finding or finding that the combinations meet the full accessing limitation of Claim 1. That's Item 1G that's in the claim charts. In fact, Ebay itself had failed to even present arguments below supporting such a finding. Second, the Board failed to recognize that the proposed combinations that it relied upon would violate the principle of operation of the APA net cash. In other words, it would change it in a way that would violate the principle of operation. And third, the Board failed to recognize that Ebay's repeated changing and modifying of its theories of invalidity in this case is diagnostic of impermissible hindsight. And finally, the Board erred in relying on admitted prior art in a CBM proceeding because it is outside the limited scope of the statute for which CBM proceedings may proceed. How can it be outside the scope of the statute prior art? Prior art under 102, 103, that's certainly within the statute. Your Honor, I think that's the exact question, which is whether or not admitted prior art qualifies as prior art under Section 102A. Well, we can, aside from the admission in the patent, we can read that it is a publication. It has a title, page number, authors, and indication of its content. In support of your argument on this, you have two citations of authority. You cite to a PTAB order that doesn't discuss admitted prior art, Reddy and Link, and the Riverwoods case from this court that is the TPAB, PTAB found, and you can see it in your brief, only holds that admitted prior art, quote, does not necessarily qualify as prior art under 102 in certain cases. And none of those cases are directly applicable here. So do you have any other support for this proposition? I do not have other cases, but what I would say is that we look at the statute, and the reason we cited the Meridian case is that even the PTAB recognizes that the statute does not even include all of what we would normally consider statutory prior art. It excludes 102E prior art. This is a transitional proceeding, effectively a congressional experiment is what CBMs are. And so for whatever their reasons are, the statute is written to limit it. But this isn't 102E prior art. I agree with you, Your Honor. The question is whether or not admission qualifies as a 102A prior art event. And it does refer to publications, I agree with you, Your Honor, but the petition is not based on the publication. That's a decision that eBay made because they had filed multiple reexamination requests in the past in which they relied on these net cash publications. They were concerned, I propose, that the patent office would reject the petitions as being redundant of previous attempts in the reexamination. So they took a shot. They said, okay, instead of using those publications that we failed with multiple times, we'll try something new, and they relied on the admitted prior art. But even if that's what they said, the board can still look at the actual printed publications, can't they? I don't know if I would agree, but in this case the board didn't. There's no finding that the board actually based its decision on the underlying publications. And so I don't think in this particular case it's relevant because the factual record shows that they did not do it. Let's assume they did. Do you think there's error in the board initiating based upon their argument that there was only the prior art as an admission? And then the board went ahead and said, well, maybe we can't look at it as an admission, but there's actual printed documents. If they had done that in the institution decision, there perhaps would have been a procedural error. I don't know. It may have been that if we had an opportunity to respond on that basis that we may have – No, I don't really – I'm not sure you're answering my question. I'm assuming the board here actually did base its decision on the printed publications and not the admission. Is there error in that? If they, in fact, based it on the publication, I would say it's error because we were not given fair notice that they were, in fact, doing it based on the publication. And I think if you look at the final written decision – If we were put on notice, then we would have had an opportunity to address those particular limitations. You were not aware it existed? I certainly was aware that it existed. I was not aware that it is – until this question was asked just moments ago that anyone had suggested that they were relying on the underlying printed publication. But they were relying on the system. I mean you were arguing about whether the system described there discloses the limitations or not, right? I would say that we were arguing whether or not Figure 2 and Columns 2 and 3 of the 602 patent that are describing certain things meet or do not meet the requirements of the claim. Is there any difference between that and the printed publications? There may or may not be. There's further discussion in the publications. But the point that I guess we're making is whether or not admitted prior art. A discussion of an event is not itself the event, right? So they could have – they're the master of their own petition. They could have, if they chose to, relied on the underlying publication. They chose not to do it. And I think given the estoppel provisions of CBMs, it is – it's important that we have a clear line as to what has been used and what has not been used. For example, if we were to prevail here, could they go back to the district court and say, oh, by the way, now I'm going to rely on the USC system. Now I'm going to go rely on that publication that's in section – that's in Column 2 because that really wasn't part of the proceedings below. It's – I think it would inject an ambiguity into the estoppel provision. Unless there's further questions on that, I would move on to accessing. So the final written decision in this case contains no finding that a currency issuing authority server accesses a first user's database packet – first user data packets in an active data packet area associated with the first user. eBay fails to refute it and identify some finding in the final written decision that does it. The closest that they come is they have a quote on page 36 of the final written decision in which the board repeats an argument that eBay had made. It says, quote, the middleman currency server accesses the first user's net cash coins to verify that the coins are authentic and have not been previously used to effect payment. That isn't good enough. It doesn't meet it. First, the board, in fact, didn't adopt that finding. There's no statement that they're adopting the argument of eBay. And they did not effectively or implicitly adopt the argument because there's no reasoned explanation. As this court recently held in the Nuvasiv case, you cannot have an effective adoption without an explicit adoption or at least some sort of reasoned explanation as to why you were adopting one argument and refuting another one. Second, even if we rely on that portion, it still doesn't meet the where part of the limitation. That is, it doesn't identify in an active data packets area associated with the first user. And third, if we take a look at the figure that eBay's expert put together in his deposition that was kind of the basis of this combination, that's a figure that's reproduced at page 12 of the reply. We can see that the theory that they actually relied upon excludes the possibility that it would meet this limitation. What happens in that figure is the buyer transmits some sort of coin to the broker and the broker sends it to the currency server. That's what they claim to be the CIIS in this case. But the claim requires that the CIIS access into the active data packets area. It's not that it's receiving it, it's just accessing it, and they have not even suggested that they are meeting that limitation. So the board didn't find it, eBay didn't argue it, and furthermore, the board could not have made such a finding. First, the board is limited under the Magnum Oil case to actually adjudicating the arguments the petitioner puts forth. They can't come up with their own arguments. And if we take a look at eBay's petition, we say that they did not address this limitation fully. So the only information they put in on this limitation is in their claim chart from the petition. That's at A356 in the record. And in addressing the limitation by the Terra Mora or the Bernstein reference, they failed to identify how the CIIS in such a system would be accessing an active data packets area, how that active data packets area would be associated with the first user. They simply don't do it, Your Honor. Unless there's questions on that, I will move on to the next point. Principle of operation. I think perhaps the clearest way to see this is we compare column 3 of the patent, which is at A241. And this is the admitted prior art section. At column 3, it says, the currency server is trusted not to record to whom the coins are issued. The currency server does not know who is exchanging coins, only the network addresses or where they are coming from. What, in your view, makes an aspect of prior art a principle of operation? And what evidence can you point to here for us to find that anonymity was a principle of operation in this case? Well, the board suggested it was just one of the goals and it wasn't the principle of operation. There is no other goal that is described in the admitted prior art. Anonymity is repeatedly referred to in columns 2 and 3, which is the admitted prior art here. And in fact, if we read it, the portion that we just talked about that, one of the important aspects of it is that the currency server does not know who's getting the coins, who has the coins, who the coins are being transmitted to. So I think a fair reading of this is only that anonymity is a key or principle aspect of the net cash operation. If we compare that to what Dr. Newman did, eBay's expert in this case, and again, if you look at the figure that's at page 12 of the reply, you can see that now, because the currency server has to take the coin from one entity or one memory and deliver it to a different memory, it needs to know who's coming and who's going. It needs to have an identification of where the coin is for the first user and who the coin is going to go to for the second user. That completely destroys the principle of operation and this anonymity and this direct teaching in column 3 that we just discussed. Finally, I want to talk about hindsight for a moment. There's some confusion in the briefing as to whether or not we're making a procedural argument with respect to the changing of the theory. We do think there's procedural issues, but really the heart of our argument is that this is diagnostic itself of hindsight. In almost every obviousness case, we do a thought experiment and we say, hypothetically, what would have happened at the time of the invention? Here, we're in an unusual situation where we have empirical evidence of what a person of lower skill in the art would actually have done. They came up with a combination that does not meet the claim. That is what Dr. Newman did in the petition in this case. They only modified it based on feedback that they received from the inventor in this case. So not only did they have the prior art hanging on the wall, as we would talk about in the old cases, they actually had the invention hanging on the wall there next to them and they could not put the prior art together in a manner that would meet the claim. Counselor, you wanted to save five minutes. You're well into rebuttal. Thank you. You can continue or we'll save it. Thank you. I would save it. Mr. Wilgrove. Good morning, Your Honors. Thank you. May it please the court. If I may, I'll go down the list of the issues that were raised by the appellant and address them in turn. The first being the question of whether there are findings on the question of whether the prior art combination discloses and teaches the accessing requirement. And clearly, in the record… Why don't you first address the question of admitted prior art, the net cash? Certainly. Thank you, Your Honor. On the admitted prior art, the board was very clear. The board took the admissions that were in the patent and said that those admissions themselves are enough to evidence a prior art system. There was an admission that the system, net cash, was prior art. That's what it says. It's a prior art system is admitted. It is admitted that it was known in this country. Why? Because the patent itself admits that it was developed at the University of Southern California. That's where net cash was developed. Does the disclosure in the patent itself constitute enough information to render the invention obvious? Yes, it does. In combination with… In combination. Yes, in combination it does. Absolutely so. What the combination is, is taking those other references that disclose middlemen brokered operations and combines it with the currency server, which has been admitted to be a prior art system that was known in this country. We know it was known in this country because it was developed. The evidence of how the system worked are the admissions in the patent about how the prior art worked. And so those admissions about the operation of the system, not only, number one, evidence the existence of the prior art system as 102A art, that is, a system that was known in this country, but also, two, from the evidentiary standpoint, describe how it works and what it teaches. And those teachings are sufficient. But your opposing counsel says this isn't the type of prior art encompassed by the statute. I disagree. 102A prior art is encompassed. The board found that the admissions themselves were sufficient to demonstrate the existence of a prior art system, one known in this country. Those were the findings of the board, and they're fully supported by what's set forth in the patent. Was that something known in this country or a printed publication? It was known in this country. We know it was developed based upon what the patent says, that it was a prior art system that was developed at the University of Southern California. It also says that it was described in printed publications. That's an optional, an additional thing, another way to meet the 102A requirements. So the way that the board looked at this and the way the admissions are written, it basically tracks the statute of 102A. Was it something in the prior art? Yes. Was it known in this country? Yes. Was it described in printed publications? Yes. It ticks all the boxes, and the board made that finding, and we submit that what's in the patent is sufficient. On the question of the findings regarding accessing, if I can turn to that, the argument that is being made by the appellant essentially misapprehends the combination that was proposed below and the combination that was found by the board to render the claims obvious. The combination takes the middleman server and the functions that the middleman performs and combines those, and that was said in many ways. It co-locates them, combines them, adapts them, and takes the currency server, and those things effectively work together to perform the functions of the CIAS, the Currency Issuing Authority, and the so-called trusted server. That's what's performing these operations. Now, the board made specific findings in support of the accessing requirement, and they're simply being overlooked by the appellant. One finding that was specifically made was that in the Terramura context, that's one of the pieces of prior art, in Terramura, there was a specific finding that the broker there receives the electronic coins from the buyer, and it temporarily stores them. It temporarily stores them. It then, under the combination, turns them over to the currency server. So what it's doing is it's temporarily storing them, and then when it's time to swap them, it goes into the memory and takes the coins out and gives them to the currency server, where they are then exchanged. That's the combination that the board found, and the findings in support of that include the final written decision at page 30, which is appendix 30 here, where it specifically says it's stored, and then you go in and you retrieve them. Now, when you... But, Mr. Fogart, you're arguing this admitted prior art to us, but when Judge Lori asked his first question, you didn't say, well, you don't have jurisdiction to consider that. Are you running away from your argument about that? I'm sorry, Your Honor. Do you have jurisdiction to consider the admitted prior art? Yeah. No, I'm not, Your Honor. The point on the accessing is simply that... How do you deal with Versada? Oh, on... Yes. Your Honor, on that question, I apologize that I misunderstood the context. You know, in light of the Husky decision, following Cuozo, we would no longer advance the argument. Well, okay. I apologize. I misunderstood your question. Okay. So, with respect to the findings, our point simply is that there were findings that were made by the board that both in the context of Terramura with the admitted prior art and Bernstein with the admitted prior art, the brokers or intermediaries in both of those situations, there were findings made that the electronic cash or the funds are stored, they are then retrieved, and then they are transferred, swapped, paid. That's what the combination is. And by virtue of storing and retrieving, that is necessarily a finding of accessing and a finding of accessing in a data packets area associated with the user. Why? Because you have to find those coins that are in memory. You have to find the coins that are in the account. You have to find the coins that are being stored. You find them, you retrieve them, and you give them to the currency server to swap. By making all of those findings, the board clearly found that the currency is being accessed and it is being accessed in an area that is associated with the user. Those are the user's coins. They're being held in escrow. They're being held by an agent. That is sufficient a finding to... and the board made those findings below. Mr. Grover, before you move to your next, your opposing counsel in his blue brief and just now in oral argument, repeats that eBay lost on some prior IPR proceedings. Do those have any bearing at all on the case? They don't. Those are reexamination proceedings procedurally. On the merits of them, they have no implications or relevance to the proceeding. Why? Because the combinations that were involved there are not the ones here. The Teramura reference was not an issue there, and the Bernstein reference was not an issue there, and the combinations that were presented to the board here are new and not previously considered. Turning then to the argument about the principle of operation, the argument seemed to be that there was, with respect to the admitted prior art, that in some way that the combination violated a principle of the prior art with respect to anonymity, and what I heard counsel say, and the best I could really hear, was that in some way anonymity was a goal of the net cash system and that that goal was not being addressed. So let me respond to that in two ways. First of all, to the extent that it is relevant at all as a principle... I think he used the phrase principle of operation. Yes, indeed. And with respect to that, and with respect to... First, let me just address straight up that the combination, the combined system, works in the same way, and that's what the board found. The way that the net cash server worked in the prior art was an entity, in that case, in one example of it, a seller, gave coins to the currency server. The currency server then swaps the coins and spits back out new coins, and it gives them to the same entity that it received them from. That's exactly how the net cash currency server is working in the combinations on which the board found these patents unpatentable. In the combined system, you have either Terramura or Bernstein providing broker functions. That broker is integrated with a currency server. The broker passes the coin that it has retrieved from its memory, and it passes those coins to the currency server. The currency server swaps those, and it sends them back to the broker function. So we have a broker server that's been integrated with a currency server, and that is working in the exact same way as the net cash system. The coins are swapped and given back to the same entity that they were received from. In addition, I submit that, as the board properly found, no principle of operation is in play here. The net cash currency server works in the same way as combined as it did in the prior arc. What does that currency server do? It receives coins. It looks up to see whether they are still valid or whether they've been spent. It marks them one way or the other, and then it exchanges new electronic currency in place of the old currency. It's doing the exact same thing. Whether or not anonymity is at play here, as the portion of the patent that Council read shows, anonymity was at best only partially supplied by the net cash system, because it did receive information about the entity that was supplying the coins to it, namely network information. So it's not as though it was an anonymous system. That was simply one aspect or one sort of goal, as the board found below, a goal of the system. Finally, with respect to the argument about hindsight, Council has now clarified that the... He said he wasn't abandoning. Well, fair enough. But what I understood the gist to be was that error was not being assigned to the admission below of the reply brief or the reply declaration. Rather, the assignment of error was to an argument that somehow the board was using hindsight to invalidate, as obvious, the claims, because it was sort of taking these teachings from reply, which it said were new teachings, not in the petition, and somehow learning from that and therefore applying hindsight. So let me address that in several ways. And I think the most important way to address it is to say that the entire premise of the argument is wrong. The premise of the argument is that the information that was submitted in reply is new, and it is not new. The information that's allegedly new includes, number one, that in the combination, there would be an internal, what's been called an internal coin swap, where the currency server takes the coins from the broker and spits them back to the broker. That was alleged to be new in reply, but it's not. And I would cite the court to appendix pages 366 and 367 by way of example. And there, when the Bernstein combination was being proposed in the petition, not the reply, but in the petition, the argument was made that it would have been obvious to adapt the intermediary, which in Bernstein is a financial institution or agent, to include a currency issuing capability of the admitted prior art net cash system, quote, to confirm the authenticity of the first user's electronic coins, mark them spent, and transfer a new set of coins to a second party. That was what was being described, taking the coins in from the buyer, marking them spent, and transferring a new set of coins to a second party. The argument is premised on the notion that that argument was first made in reply, and it wasn't. It was squarely in the opening petition and also in Dr. Newman's declaration at appendix page 1301. In support of the petition, his opening declaration made the same theory. The board never said this was a new theory. Whenever it was being addressed below by the board... Didn't they say, well, this was in reply to something you raised for the first time? What they said about the coin swap was whenever they addressed it below, they put quotes around the word new, and then they went on to say at appendix page 41 that this was an elaboration that was being provided, not that it was a new theory. Secondly, the argument is being made that the reference that was being supplied that taught doing an internal coin exchange, an internal coin swap, the Simon reference, the argument was made in the briefs by the appellant that somehow Simon was first identified as providing that coin swapping function in reply. And once again, that's simply not true. I would cite the court to appendix page 1251. And at that page, 1251 of the appendix, this is Dr. Newman's opening declaration. And he said, quote, that Simon teaches, quote, indirect payments through a middleman in which the middleman, which is the bank in the Simon reference, exchanges the buyer's currency for new currency issued to the vendor based upon instructions from the buyer. So it takes the buyer's coins, and it exchanges the buyer's currency for new currency. That was how Simon was being described. Simon had multiple embodiments, and those multiple embodiments were described in the papers in support of the petition, but certainly that aspect of it was described. In addition, in the petition, the petition cited two portions of Simon that teach doing that internal currency swapping, namely Simon at column 8, lines 5 to 57, which I believe is at... The cites to those were at pages of the appendix 353, 368, 1278, and 1303. So there was ample evidence to show that this theory was not new and that plain sight simply wasn't used. All of this was in the prior art. Thank you, Your Honor. Thank you, counsel. Mr. Wisner has 240 for rebuttal if he needs it. Thank you, Your Honor. There's a fundamental misunderstanding with respect to the accessing requirement. A broker sending on unsolicited coins to the CIS is not a CIS accessing the data packets. If you take a look, for example, at column 15 of the patent, the 602 patent, which is at A247, it says whenever it's stated that the CIS accesses data on an active currency storage area, it should be understood that this also includes a situation in which the user transfers the data represented in the electronic currency to the CIS, and the CIS only requests that the transfer be made without actually gaining access to and withdrawing the data. So there's only 2 examples given. Accessing is either the normal use. You go, grab it, you withdraw it from the location, or you send a request. You instruct the memory to send it back. This has to do with some of the principles of the 602 patent's operation, which is specifically because you want to be able to operate the system in a particular way, the CIS has to be in charge. It has to be the master of the system. And therefore, when you put this combination together, where the broker is just passively sending on the coins, it does not meet the requirement of accessing. Secondly, even in Council's discussion here, he talks about this very point. He says, well, you know, the currency server receives the coins. There's also some mischief going on with the term entity in this case. When they talk about the prior art, which is figure 2 in the 602 patent, it's very clear that the address, the particular entity or item that is sending up the coin is the one that's getting the new coin back. It is analogous to me going into the 711 and saying to the cashier, I have a 20. Would you give me two 10s in return? She doesn't need any identification from me. She doesn't need to know any information about me. That's entirely different from the modified system that they put together, where basically what happens is you give someone $20 and say, someone else is going to come in. His name is Bob. Would you give him this $20 for me? That is entirely different. And in their combinations, they are not meeting that at all. We describe in our opening brief at page 46 how the new theories are significantly different in the reply than they were in the opening session. They claim in the original petition that net cash is unchanged. We see in the figure that's reproduced in the reply at page 12, it has to be changed. You're not sending the coin back to the same location. You have to send it to a different location. They had reasons to combine the references that had nothing to do with double spending. Their reasons would not have addressed whether or not you send the coin before or after the transaction. You could send them either. I see my time has expired. Thank you so much. It has been spent. Thank you, Mr. Wisney. We'll take a case under advisement.